# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

THOMAS AHEARN and            :
EILEEN AHEARN,
as Parents and Natural Guardians  :
of LOUIS AHEARN,
                              :

       **Plaintiffs**               **CIVIL ACTION NO. 3:19-0868**
                              :
       **v.**
                              :       **(JUDGE MANNION)**

EAST STROUDSBURG
SCHOOL DISTRICT and         :
COLONIAL INTERMEDIATE
UNIT 20,                       :

       **Defendants**         :

## M E M O R A N D U M

Plaintiffs Thomas and Eileen Ahearn, as parents and natural guardians of their adult son, Louis Ahearn, who is not competent, filed this action alleging that when Louis attended defendant East Stroudsburg School District ("ESSD") he was educated in an autistic support class run by defendant, Colonial Intermediate Unit 20 ("CIU20"), and that defendants failed to follow his staff action for emergency plan known as a "SAFE PLAN." Plaintiffs allege that defendants' failure to adhere to Louis's SAFE PLAN subjected him to physical and mental abuse, including placing him in handcuffs and locking him in a bathroom, which caused him harm and to become fearful. Plaintiffs were then required to enroll Louis in another school that was one hour away. Plaintiffs allege that defendants' conduct denied Louis's right to a free appropriate public education ("FAPE") to which he was entitled due to his

disability as an autistic child and, constituted unlawful discrimination against Louis in violation of the 14th Amendment Equal Protection Clause and the Due Process Clause. Plaintiffs' constitutional claims are brought pursuant to 42 U.S.C. §1983. Plaintiffs also allege that defendants intentionally discriminated against Louis due to his disabilities and failed to provide him with a safe environment for schooling in violation §504 of the Rehabilitation Act, 29 U.S.C. §794.

Defendants filed a motion to dismiss, (Doc. 8), plaintiffs' amended complaint, (Doc. 5), for lack of subject matter jurisdiction arguing that plaintiffs failed to exhaust their administrative remedies as required under the Individuals with Disabilities Education Act ("IDEA") and, that plaintiffs failed to state cognizable claims under §504 and §1983. For the following reasons, defendants' motion to dismiss will be **GRANTED** for lack of subject matter jurisdiction since exhaustion under the IDEA's administrative process is required in this case based on the nature of plaintiffs' claims.


I.    **FACTUAL BACKGROUND**

Plaintiffs' amended complaint, (Doc. 5), alleges that in February of 2012, Louis, who was a child with an intellectual disability, autism and a speech/language impairment, enrolled in ESSD, and that he attended the high school during the 2013-2014 school year. During his attendance of ESSD high school, Louis was educated in an autistic support class run by CIU20.

ESSD contracted with CIU20 to provide specialized services for special needs children. Both defendants knew that Louis had "limitations in the adaptive skills areas of receptive language, expressive language, written language, personal living skills, academic skill, school community skills, interpersonal relationships and coping skills." As such, defendants developed a staff action for emergency plan for Louis, called a "SAFE PLAN", in order to redirect him and keep him on task during the school day.[1] In relevant part, the SAFE PLAN directed that if Louis became aggressive in class and could not be redirected, school staff could use TACT II passive restraints. If the restraints did not work, Louis's parents were to be notified, and if they did not respond, 911 was to be called.

Plaintiffs allege that defendants failed to follow Louis's SAFE PLAN. Plaintiffs also allege in both Counts that defendants failed to provide Louis with a FAPE in violation of the 14th Amendment and the RA. (Doc. 5 at ¶'s 27 & 42). Specifically, plaintiffs aver that on one occasion "Louis was restrained and placed into handcuffs by the school resource officer at the request of representatives of the Defendants", and that on another occasion, "Louis was locked in a bathroom at the [ESSD] High School North property and was not permitted to leave, as a result of which Louis destroyed items inside the bathroom and caused harm to himself." Plaintiffs also allege that defendants'

---

[1]Since the entire provisions of Louis's SAFE PLAN are detailed in plaintiffs' amended complaint, (Doc. 5 at ¶19), they are not repeated herein.

conduct caused Louis "to develop fear, to become afraid of strangers, and to develop an aversion to using restrooms and bathrooms."

Since plaintiffs became concerned that defendants could not educate Louis and follow his SAFE PLAN, they enrolled him "in the Colonial Academy in Wind Gap, Pennsylvania in November of 2015, necessitating a one hour one way bus ride for Louis to attend school." Plaintiffs also allege that Louis will "require additional educational support beyond the time frame mandated by the Commonwealth of Pennsylvania."

In Count I, plaintiffs raise their equal protection and due process claims under the 14th Amendment and allege that defendants' conduct, in failing to follow and to have policies and procedures in place to follow the SAFE PLAN, deprived Louis of a free appropriate public education (FAPE) and, constituted unlawful discrimination against him based on his disability as an autistic child.

In Count II, plaintiffs raise their claim under the RA and allege that defendants received Federal Financial Assistance for a special education program in which Louis was enrolled, and that defendants intentionally discriminated against Louis due to his disabilities, namely, his intellectual disability, autism and speech and language impairment. Plaintiffs also allege that defendants failed to provide Louis with a safe school environment and appropriate educational atmosphere that was provided to other students in the district who were not suffering from disabilities. Additionally, plaintiffs allege that defendants were deliberately indifferent to the rights of Louis since they

knew, or should have known, that their failure to follow the SAFE PLAN would result in a violation of Louis's federal rights, and that their conduct proximately caused him injuries and damages.

## II.     PROCEDURAL BACKGROUND

The plaintiffs filed this action on April 18, 2019 in the Pike County Court of Common Pleas. On May 20, 2019, defendants removed this case to federal court. (Doc. 1). Defendants then filed a motion to dismiss the original complaint, (Doc. 3), arguing, in part, that the court lacked subject matter jurisdiction due to plaintiffs' failure to have exhausted their administrative remedies under the IDEA. In response, plaintiffs filed an amended complaint on June 14, 2019. (Doc. 5). In their amended complaint, plaintiffs bring 14th Amendment claims against defendants pursuant to 42 U.S.C. §1983, and assert a disability discrimination claim against defendants under Section 504 of the Rehabilitation Act of 1973 ("RA"), 29 U.S.C. §791, *et seq.*[2] As relief against defendants regarding their federal claims, plaintiffs request compensatory damages, interest, and costs.

The plaintiffs allege in their amended complaint, (Doc. 5, ¶'s 35-36), that they did not exhaust all applicable administrative procedures under the IDEA

---

[2]In plaintiffs' amended complaint, they did not re-assert their state law intentional infliction of emotional distress claim and they added allegations as to why they were not required to exhaust their administrative remedies under the IDEA.

since no exhaustion is required where, as here, plaintiffs seek compensatory damages that is not available under the IDEA administrative process and, since they do not seek relief under the IDEA. Plaintiffs also allege that exhaustion is not required since IDEA eligibility is not at issue and, since the location and manner of the education of Louis has changed after the acts or omissions upon which his claims are based.

On June 27, 2019, defendants filed a motion to dismiss the plaintiffs' amended complaint, (Doc. 8), with respect to their federal claims under Fed.R.Civ.P. 12(b)(1) and Fed.R.Civ.P. 12(b)(6). Defendants' motion has been briefed and is ripe for disposition. (Docs. 9. 14 & 15).

The plaintiffs allege that this court has jurisdiction over their federal claims based on 28 U.S.C. §1331 and §1343. Venue is proper in this district.

### III. STANDARD OF REVIEW UNDER RULE 12(b)(1)[3]

Defendants' motion to dismiss plaintiffs' amended complaint is for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1) and for failure to state a claim under Fed.R.Civ.P. 12(b)(6). "When a party moves to dismiss under more than one Rule 12 ground, the Court must first consider the Rule 12(b)(1) challenge, 'because if it must dismiss the complaint for lack of

---

[3]Since the court will grant defendants' motion to dismiss plaintiffs' amended complaint for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1), it does not state the standard of review insofar as defendants' motion is one for failure to state a claim under Fed.R.Civ.P. 12(b)(6).

6

subject matter jurisdiction, all other defenses and objections become moot.'" A.D. v. Haddon Heights Bd. of Educ.,90 F.Supp.3d 326,334 (D.N.J. 2015), aff'd, 833 F.3d 389 (3d Cir. 2016), (citation omitted). Here, defendants argue that the plaintiffs have failed to exhaust administrative remedies with respect to their claims. "A motion to dismiss under Rule 12(b)(1) challenges the jurisdiction of the court to address the merits of the plaintiff's complaint." Vieth v. Pennsylvania, 188 F. Supp. 2d 532, 537 (M.D.Pa. 2002). The failure to exhaust administrative remedies is a jurisdictional issue and the appropriate device to raise this issue is a motion to dismiss under Rule 12(b)(1). *See* Batchelor v. Rose Tree Media School Dist., 759 F.3d 266, 271 (3d Cir. 2014). A Rule 12(b)(1) dismissal is not a judgment on the merits, but only a determination that the court lacks the authority to hear the case. Swope v. Central York Sch. Dist., 796 F. Supp. 2d 592, 599 (M.D.Pa. 2011).

An attack on the court's jurisdiction may be either "facial" or "factual" and the "distinction determines how the pleading must be reviewed." Constitution Party of Pennsylvania v. Aichele, 757 F.3d 347, 357 (3d Cir. 2014). A facial attack tests the sufficiency of the pleadings, while a factual attack challenges whether a plaintiff's claims fail to comport factually with jurisdictional prerequisites. *Id.* at 358; *see also* Haddon Heights, 833 F.3d 389, 394 n. 5 (3d Cir. 2016). An attack on jurisdiction based on a failure to exhaust remedies that is filed prior to answering the complaint is usually, "by

7

definition, a facial attack" on the pleadings unless the defendant has offered factual averments in support of its motion. *Id.*

Thus, defendants raise a facial challenge to this court's subject matter jurisdiction since they have not yet filed their answer to the amended complaint and they do not offer competing facts. As such, the court must accept the amended complaint's allegations as true. " Haddon Heights Bd. of Educ., 90 F.Supp. 3d at 334 (citations omitted).

"Because federal courts are courts of limited jurisdiction, the party seeking to invoke the court's jurisdiction bears the burden of proving the existence of subject matter jurisdiction." Haddon Heights Bd. of Educ.,90 F.Supp.3d at 334 (citing Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377, 114 S.Ct. 1673 (1994)).


**IV. DISCUSSION**

Initially, defendants move under Rule 12(b)(1) to dismiss plaintiffs' amended complaint for failure of plaintiffs to have exhausted their administrative remedies as required by the IDEA, 20 U.S.C. §1400, *et seq.*. The parties do not dispute that plaintiffs did not exhaust their administrative remedies and, that "[i]n the normal case, exhausting the IDEA's administrative process is required in order for the statute to 'grant subject matter jurisdiction to the district court.'" Haddon Heights Bd. of Educ., 90 F.Supp.3d at 334

8

(citing Batchelor v. Rose Tree Media School Dist., 759 F.3d 266, 272 (3d Cir. 2014) (quoting Komninos v. Upper Saddle River Bd. of Educ., 13 F.3d 775, 778 (3d Cir 1994)). *See also* Woodruff v. Hamilton Tp. Public Schools, 305 Fed.Appx. 833, 837 (3d Cir. 2009) ("[T]he IDEA [20 U.S.C. §1415(l)] ordinarily requires that a party exhaust administrative remedies, ..., prior to bringing suit in federal court.)" Since the district court is a court of limited jurisdiction, the burden of establishing jurisdiction always rests upon the party asserting it, here, plaintiffs. *See* Kokkonen v. Guardian Life. Ins. Co. of America, 511 U.S. 375, 377 (1994).

"The IDEA requires participating states to provide disabled children with a FAPE, 20 U.S.C. §1412(a)(1)(A), and sets forth an administrative mechanism for resolving disputes concerning whether a school has complied, id. §1415." Wellman v. Butler Area School District, 877 F.3d 125, 131 (3d Cir. 2017).[4]

In Wellman, 877 F.3d at 127, the Third Circuit stated that the "Supreme Court's recent opinion in Fry v. Napoleon Community Schools, —— U.S. ——, 137 S.Ct. 743, 197 L.Ed.2d 46 (2017), [] requires that we consider the

---

[4]The court notes that the Third Circuit's precedential decision in Wellman v. Butler Area School District, 877 F.3d 125 (3d Cir. 2017), supports the dismissal of the instant case due to plaintiffs' failure to have exhausted administrative remedies under the IDEA. *See also* J.L. by and through Leduc v. Wyoming Valley West School District, 2016 WL 4502451, Civil No. 15-1750 (M.D.Pa. Aug. 29, 2016), aff'd. 722 Fed.Appx. 190 (3d Cir. 2018).

'crux'—the 'gravamen'—of the complaint to determine whether a plaintiff seeks relief for 'denial of the IDEA's core guarantee [of] ... a free and appropriate education [FAPE,]'; if so, then the plaintiff must exhaust his administrative remedies under the IDEA." (internal citation omitted). In Wellman, *id.* at 131, the Third Circuit then explained that:

> The Supreme Court [] [held that "exhaustion is not necessary when the gravamen of the plaintiff's suit is something other than the denial of the IDEA's core guarantee—what the Act calls a 'free appropriate public education [FAPE].'" Id. at 748 (quoting 20 U.S.C. §1412(a)(1)(A)). In reaching this conclusion, the Court noted that the IDEA requires exhaustion only where the plaintiff "'seek[s] relief that is also available' under the IDEA." [Fry 137 S.Ct.] at 752 (quoting 20 U.S.C. §1415(l)). "[T]o meet that statutory standard, a suit must seek relief for the denial of a FAPE, because that is the only 'relief' the IDEA makes 'available.'" Id. The Court explained that "in determining whether a suit indeed 'seeks' relief for such a denial, a court should look to the substance, or gravamen, of the plaintiff's complaint." Id.

Thus, the court must examine whether plaintiffs' claims are subject to §1415(l)'s exhaustion requirement based on the nature of their amended complaint and if the complaint concerns a FAPE. "[A] plaintiff who seeks relief available under the IDEA must exhaust his administrative remedies before filing a lawsuit, even if he relies on laws other than the IDEA." *Id.* at 131 (citing §1415(l) ("The IDEA [] requires parties to use [its administrative] procedures whenever they seek relief 'available under this subchapter' even if they are pursuing relief under other federal laws.")). However, "[u]nder Fry, if a school 'refus[ed] to make an accommodation' for a disabled child, 'injuring [the child]

10

in ways <u>unrelated</u> to a FAPE,' a plaintiff 'seeking redress for those other harms ... is not subject to §1415(l)'s exhaustion rule.'" <u>Doucette v. Georgetown Public Schools</u>, 936 F.3d 16, 23 (1st Cir. 2019) (citing <u>Fry</u>, 137 S.Ct. at 754–55) (emphasis original).

In considering whether the gravamen of a plaintiff's complaint is the denial of a FAPE, the Supreme Court in <u>Fry</u> posed two hypothetical questions to consider. First, could "the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was not a school—say, a public theater or library? And second, could an adult at the school—say, an employee or visitor—have pressed essentially the same grievance?". <u>Wellman</u>, 877 F.3d at 132 (citing <u>Fry</u>, 137 S.Ct. at 756). Here, the court finds the answers to both questions in this case with respect to plaintiffs' amended complaint to be no. As such, the court finds that the amended complaint of our plaintiffs concerns a FAPE and alleges, at its core, that Louis's injuries related to a FAPE, i.e., were proximately caused when defendants failed to follow his SAFE PLAN. *See id.*

Plaintiffs contend that exhaustion is not required in this case since they seek monetary damages for the alleged injuries to Louis caused by defendants' violations of the RA and §1983 and since they do not seek relief under the IDEA. No doubt that "under <u>Fry</u>, a court must review both the entire complaint and each claim to determine if the plaintiff seeks relief for the denial

11

of a FAPE." *Id.* at 133. Thus, the Third Circuit adopted a claim-by-claim approach to the <u>Fry</u> analysis. Plaintiffs state that they allege Louis was harmed when he was restrained and placed into handcuffs by a school resource officer, and that Louis sustained injury when he was locked in a bathroom at East Stroudsburg High School. Plaintiffs also state that they allege defendants' actions by restraining Louis caused him to "develop fear, to become afraid of strangers and to develop aversion to using restrooms and bathrooms." Thus, they contend that "the gravamen of these allegations do not allege the denial of a FAPE, but rather set forth discriminatory conduct against Louis [] as an individual with a disability in a public institution, as envisioned by §504 of the Rehabilitation Act."

Additionally, plaintiffs rely on the Supreme Court's decision in <u>Knick v. Township of Scott</u>, — U.S. —, 139 S.Ct. 2162 (2019), and state that "according to the recent precedent established by the United States Supreme Court, exhaustion of prior claims is no longer required", and that extension of the Supreme Court's decision in <u>Knick</u> to their claim under the 14th Amendment is warranted since <u>Knick</u> applied not only to the 5th Amendment but to any other claim grounded in the Bill of Rights. (Doc. 14 at 8-9).

Defendants state that, at essence, "Plaintiffs' amended complaint expresses dissatisfaction with the Defendants' alleged failure to follow a SAFE PLAN [put in place in order to "redirect" Louis "and keep [him] on task

during the school day"] that was part of [Louis's] special education plan that Plaintiffs allege not only deprived [Louis] FAPE but caused them to enroll [Louis] at a different school in 2015." Defendants also point out that plaintiffs allege, based on their actions, Louis will "require additional educational support beyond the time frame mandated by [Pennsylvania]." As such, defendants contend that the issues raised by plaintiffs "should have been addressed during an administrative due process hearing within the time limits set forth by the IDEA and the damages claimed, i.e. 'additional educational support' and 'loss of FAPE' are clearly within the realm of the administrative process."

As defendants explain:

Plaintiffs allege that improper restraints and behavioral control techniques, such as the failure to use the SAFE PLAN, resulted in a regression in development and learning. Due to Plaintiffs' concerns over Defendants education for [Louis], they enrolled [Louis] in a different school and also allege a deprivation of FAPE such that they allege [Louis] will need additional educational support. (A. Comp. ¶25, 27, 33). Although Plaintiffs' claim in their amended complaint that the exhaustion of administrative remedies is not required (A. Comp. ¶36), it is clear from the allegations made in the complaint that the ultimate theory behind their claims is the denial of FAPE to [Louis] and is based on the usage of improper disciplinary techniques and the failure to follow the SAFE PLAN, which was part of [Louis's] special education plan.

(Doc. 9 at 7-8).

Both of plaintiffs' federal claims against defendants pertain, in large

part, to the alleged deprivation of educational services to Louis. Further, both claims involve Louis's educational experience while he was attending defendants' schools. The court finds that both of plaintiffs' claims relate to the implementation of, and adherence to, Louis's SAFE PLAN by defendants and involve the provision of a FAPE. Thus, they are subject to exhaustion under the IDEA.

In the present case, as in Wellman, "[a]pplication of the Fry framework to [plaintiffs'] entire complaint and each of [their] claims shows that [their] grievances all stem from the alleged failure to accommodate [Louis's] condition[s] and fulfill his educational needs." Wellman, 877 F.3d at 133. "A review of [plaintiffs'] detailed factual allegations shows that the conduct about which [they] complain[] would not have occurred outside the school setting and that a nonstudent could not (and would not) have 'pressed essentially the same grievance.'" Id. (quoting Fry, 137 S.Ct. at 756). As such, the court finds that, under Fry, both of plaintiffs' claims seek relief under the IDEA and are subject to exhaustion. See id. at 134.

The instant case is similar to Leduc, 2016 WL 4502451, which was affirmed by the Third Circuit. See 722 Fed.Appx. 190. As held in Leduc, 2016 WL 4502451, at *4-*5, since plaintiffs alleged that the actions of the school district constituted a "deprivation of [the student's] guaranteed right to a free appropriate public education" and caused "a set back and delay in his ability

14

to learn and benefit from the special educational services provided by [school district]", they were asserting a claim under the IDEA even though plaintiffs brought their claims under the RA and §1983. The court agreed with the school district that "[p]laintiff[s'] reframing of the IDEA claim as §504 and §1983 claims falls squarely within the IDEA's rule of construction in §1415(l), which prohibits plaintiffs from 'circumventing the IDEA's exhaustion requirement by taking claims that could have been brought under IDEA and repackaging this claim under some other statute-*e.g*, Section 1983, Section 504 of the Rehabilitation Act, or the ADA.'" (quoting <u>Batchelor v. Rose Tree Media Sch. Dist., 759 F.3d at 272</u>); *see also* <u>Haddon Heights Bd. of Educ., [90 F.Supp.3d at 334]</u> ("Section 1415(l) of the IDEA requires exhaustion of the administrative hearing process not only in actions brought directly under the IDEA, but also 'in non-IDEA actions where the plaintiff seeks relief that can be obtained under the IDEA.'" (citing <u>Batchelor, supra)</u>. As such, "Section 1415(l) 'bars plaintiffs from circumventing [the] IDEA's exhaustion requirement by taking claims that could have been brought under [the] IDEA and repackaging them as claims under some other statute.'"(citations omitted).

Thus, as in <u>Leduc</u>, *id*. at *5, the IDEA's exhaustion requirement applied to plaintiffs' case and their action was dismissed without prejudice for lack of subject matter jurisdiction since they failed to exhaust their administrative remedies under the IDEA.

After evaluating the nature of both of plaintiffs' federal claims against defendants in the instant case, *i.e.*, the 14th Amendment claims and RA claim, the court finds that they all relate to "the provision of a free appropriate public education to [Louis]." Haddon Heights Bd. of Educ., 90 F.Supp.3d at 334 (citations omitted). As mentioned, plaintiffs state that the SAFE PLAN was one of the services listed in Louis's FAPE with defendants to redirect him when he became off task, agitated and unruly at school. FAPE is defined by the IDEA as including "special education and related services." 20 U.S.C. §1401(9). *See also* Wellman, 877 F.3d at 135 (stating that in Fry, 137 S.Ct. at 753-54, the Court "explain[ed] that the FAPE requirement entitles a child to 'meaningful access to education based on her individual needs.'" (citation and internal quotation marks omitted)). Additionally, plaintiffs allege that as a result of both defendants' misconduct Louis suffered a deprivation of his protected educational rights under the FAPE and §504, as well as educational set-backs. They allege that since defendants failed to follow Louis's SAFE PLAN, which was an integral part of Louis's IEP and required based on his disabilities, he could not continue in their schools and they were forced to enroll Louis in another school, Colonial Academy. All of plaintiffs' allegations, including the two incidents of handcuffing of Louis and locking him in a bathroom, as well as the deprivation of his education, directly relate to the defendants' alleged violations of Louis's SAFE PLAN and, at essence allege

16

violations of his FAPE which are subject to the administrative remedies under the IDEA.

Thus, as in <u>Wellman</u>, 877 F.3d at 134-35, "[plaintiff's] grievance[s] [are] that [Louis] was unable to access educational services [at defendant schools due to defendants' alleged violations of Louis's SAFE PLAN], which is something only a student at school can seek", [t]hus, th[ese] [are] not [] claim[s] that could have been brought outside a school setting or by a nonstudent and, as a result, [they] [are] [] claim[s] that also seek[] relief for failing to provide a FAPE and [are] subject to exhaustion."

Moreover, as noted in <u>Leduc</u>, 2016 WL 4502451, *5, "[i]t is of no moment that plaintiffs only seek monetary damages in their complaint." (citing <u>Batchelor, 759 F.3d at 276</u>). *See also* <u>J.A. v. Monroe Township Board of Education</u>, 2019 WL 1760583, *4 n. 3 (D.N.J. April 22, 2019) ("The fact that Plaintiffs seek monetary damages in addition to other relief does not free them from the obligation to exhaust administrative remedies [under the IDEA].") (citations omitted); <u>Leduc</u>, 722 Fed.Appx. at 194.

Thus, plaintiffs were required to have exhausted the administrative process provided by the IDEA with respect to all of their federal claims since their claims under these statutes are sufficiently based on [Louis's] alleged deprivation of a FAPE and proper educational services falling within the scope of an action contemplated by the IDEA.

Additionally, plaintiffs reliance on <u>Knick</u> is misplaced. In <u>Knick</u>, the Supreme Court held that the plaintiff property owner had an actionable 5th Amendment claim under the Takings Clause when the government took his property without paying for it, and could bring the claims in federal court under §1983 at that time. The Court held that the property owner does not have to first seek just compensation under state law in state court, and wait until the state court has denied his claim for just compensation to seek relief in federal court under §1983. The Supreme Court in <u>Knick</u>, 139 S.Ct. at 2167, found that the state-litigation requirement to seeking relief in federal court with respect to a §1983 claim under the Takings Clause imposes an "unjustifiable burden on takings plaintiffs [and] conflicts with the rest of our takings jurisprudence, and must be overruled."

The court finds that the <u>Fry</u> test is still applicable to the issue in this case, in the context of a school setting alleging deprivations of a student's FAPE, regarding whether plaintiffs were required to have exhausted their administrative remedies under the IDEA before filing this action raising claims under §1983 and the RA. As stated, under the <u>Fry</u> test, the court has found that the "gravamen" or "essentials" of plaintiffs' amended complaint concern the denial of Louis's FAPE and it alleges that the harms Louis suffered were mainly educational, i.e., the denial of his educational opportunity at defendant schools. <i>See</i> <u>Fry</u>, 137 S. Ct. at 755. The Court in <u>Knick</u> did not overturn <u>Fry</u>

18

and did not address exhaustion under the IDEA. Rather, Knick ... overrul[ed] the exhaustion requirement for takings claims established by Williamson County [Regional Planning Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172, 105 S.Ct. 3108 (1985)]." Bonilla v. City of Allentown, 2019 WL 4386398, *2 (E.D.Pa. Sept. 12, 2019).

In fact, the Knick case was decided, (June 21, 2019), before the case of Doucette v. Georgetown Public Schools, supra., (August 26, 2019), in which the First Circuit still held that the Fry test must be applied to plaintiffs' claims to determine if they must exhaust their administrative remedies under the IDEA regarding the alleged denial of a FAPE to a student. See also Doe v. Dallas Independent School District, 941 F.3d 224 (5th Cir. Oct. 25, 2019) (Fifth Circuit applied Fry test after Knick decision to determine "when §1415(l) requires plaintiffs to exhaust claims under statutes other than the IDEA."); Paul G. by and through Steve G. v. Monterey Peninsula Unified School District, 933 F.3d 1096 (9th Cir. Aug. 12, 2019) (Ninth Circuit applied the Fry test to determine "when there must be administrative exhaustion in a case purportedly invoking statutes other than the IDEA [i.e., the ADA and the RA]." Further, as defendants state, "[i]f Plaintiffs' argument [that exhaustion is no longer required under the IDEA based on Knick] prevails, it would in effect, negate any exhaustion requirement in **any** case." (Doc. 15 at 2) (emphasis original).

Since both of plaintiffs' federal claims against defendants fall under the IDEA and since plaintiffs have not exhausted the IDEA administrative remedy process, their claims must be dismissed without prejudice.

## V.    CONCLUSION

For the foregoing reasons, defendants' motion to dismiss, (Doc. 8), will be **GRANTED** since the court lacks subject matter jurisdiction over plaintiffs' federal claims, Counts I & II, of their amended complaint, (Doc. 5). Plaintiffs' federal claims against defendants will be **DISMISSED WITHOUT PREJUDICE**. A separate order shall issue.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Dated: February 13, 2020**

19-0868-01.wpd